The next case on for argument is Oquendo v. City of New York. So we'll let the courtroom clear before we start that. Good morning, Mr. Burks. Good morning. Stephen Burksine for the plaintiff. The jury may find that the plaintiff was falsely arrested and maliciously prosecuted on the charge of driving while intoxicated because the record shows a factual dispute whether the officers reasonably believe that plaintiff was, in fact, intoxicated. There were three primary reasons for this. Number one, the timing of the plaintiff's alcohol consumption that night. He had three drinks. The second drink he had no later than 10.30 p.m. the night before. The third drink was sometime that morning. So if he didn't drink in excess, and we're talking wine here, if he didn't drink in excess, then by 6.30 in the morning, a jury can find that Sergeant Chow could not have had a good-faith belief that the plaintiff was intoxicated. Did Sergeant Chow know all of that? No, but if the plaintiff didn't drink in excess, then it stands to reason the plaintiff would not have appeared to be intoxicated, and he wouldn't have had a basis to bring him in. Well, that's circular. What the officers saw was a man who had been sitting in a car in the middle of the street for 20 minutes, sleeping with an open container of alcohol next to him. But if you arrest somebody for DWI, you have to do more. Is he intoxicated, or is something else going on? And there's evidence in the record to suggest that the plaintiff did not appear to be intoxicated, he didn't act intoxicated. We have five or six officers in the record, either at the scene or at the station, who testified, either they didn't smell alcohol on his breath, he didn't appear to be intoxicated, he wasn't acting like somebody who was intoxicated, he wasn't stumbling around. So you even have one of the reports, Sergeant ... Faint odor of alcohol on his breath. They said he didn't have ... Open container, sleeping in the middle of the street with the car engine going. That doesn't ... And the car in gear. That means it doesn't give rise to probable cause that he's intoxicated. Really? No, it means something is going on, but you can't just look at a person in that situation and say, all right, come with me, you have the right to remain silent, we're going to the station. No, you size him up. Are his eyes red? Do I smell alcohol on his breath? Is he slurring his words? You don't have that here. You have an unusual situation, and I agree, the optics aren't very good, but it doesn't mean there's probable cause for DWI. Not when you have five or six officers at the station or on the scene who say there was no indication that he was intoxicated. You even have a report from Sergeant Fizell, who deemed plaintiff fit for duty. No odor of alcohol on his breath. His eyes were normal. His balance was okay. So you have on one hand ... Alcohol at his fingertips. It doesn't mean he was intoxicated. It doesn't mean ... Because he wasn't acting like he was intoxicated. Otherwise you have this ... But that's speculation. It's speculation. It's speculation. I thought they came up and found him asleep. Say it again. I'm agreeing with Judge Parker. I thought they came up and found him asleep. Correct. Somebody called in, hey, you got a guy asleep in a car at a stoplight. But that doesn't ... He was asleep for 20 minutes. But that doesn't mean he's intoxicated. You have a problem. You have a different ... The tire was in drive too, wasn't it? His foot was on the brake. Correct. Again, the optics aren't very good, but to arrest him on that basis alone is supposition because you don't know enough. What does he look like? How is he talking? Do I smell alcohol in the car? Do I smell alcohol on his breath? You don't have that. He hadn't even been drinking much. On these facts ... That's what he said. Well, but if he wasn't drinking, then he wouldn't have appeared to be intoxicated, which means Sergeant Chow wouldn't have had a basis to think that he was under the influence. What did we do with the container? That's not a factor? The open container in the car? It's a factor, but I don't think it's enough to say he was driving while intoxicated. That plus the sleep. You could have ... Five minutes in the middle of the street. I agree. What were these officers supposed to do? Give him a field ... Give him a cup of Starbucks? Give him a field sobriety test on the spot. We see it all the time on the highway. He passed the field sobriety test in the police station. What's the relevance of refusal to take the breathalyzer? Is there any relevance to that? It seems like it's admissible at trial, but what about here? Isn't it something, at least as to the malicious prosecution cause of action, is relevant to whether the probable cause was sustained, was continued? Well, again, he passed the field sobriety. He doesn't give the breathalyzer pursuant to a legal principle in New York that's been in place for 50 years that you can invoke the right to counsel and they can't have you submit to a breathalyzer until the attorney shows up and there was still 45 minutes . . . That's not really the rule, right? The rule is that you can make some attempts to contact a lawyer and get him there quickly, but it's not going to interfere with the breathalyzer administration, right? That seems to be the New York case law. But you suppress the scientific evidence if they violate that principle, but . . . But he was permitted to make phone calls. He called his wife and he called the union. But they wouldn't let him contact his attorney. But more important, he passed the field sobriety test. So again, the . . . What he's asking, is it relevant? I mean, the fact . . . I don't know if it's relevant if he passed the field sobriety test. My point is this . . . So I ask whether it's relevant that he wouldn't take the breathalyzer because you get a false arrest cause of action, you got malicious prosecution too, so . . . Correct. The refusal to take the breathalyzer is two hours after he was found asleep at 630 in the morning in this road, right? So if you have a malicious prosecution claim, doesn't the refusal to take the breathalyzer, isn't that relevant to that part of the case? You can factor it in to that part of the case, but also consider the other facts that suggest that people at the station did not believe that he was exhibiting any signs of intoxication. So at that point, you're proceeding with a prosecution without a basis to believe that he was intoxicated. So that's the basis for the malicious prosecution claim. Thank you. Thank you. And you've reserved three minutes for rebuttal, Mr. Bergstein. Mr. Henry. May I please the Court? My name is Claiborne Henry on behalf of the City. There are four sets of facts here that are not in dispute. Number one, the appellant was found asleep at his wheel in the middle of the road as the traffic lights cycled through for approximately 20 minutes. The car was in gear. In drive, his foot was mercifully on the brake at any time this car could have sped forth in the intersection. Number two, there was an open bottle of beer half-drank in the center console within his reach. Number three, he admitted that his eyes were watery, which under the circumstances was a classic indicia of intoxication. Number four, he admitted to consuming alcohol earlier that morning and later that evening. Just a couple of glasses of Chardonnay. Yes, Your Honor, which is just as potent as a couple of shots of any liquor. He admitted that there was . . . We've got to find out your source of Chardonnay. I'm not much of a drinker, Your Honor. And there was a scent of . . . it was an odor of alcohol on his breath. He admitted there was an odor of alcohol emanating from his car some approximately 20 minutes earlier, but then contended that it had dissipated. However, the windows to his car was rolled up, and he had been asleep during that entire time. So many of the hallmarks of intoxication were present. And under the circumstances, a reasonable officer certainly could have concluded that he had either been under the influence or driving while intoxicated. What Appellant has attempted to do is cabin each factor individually, but it's a totality of the circumstances that the officer was considering before making that arrest. What are we to make of the IAB instructions that found that Sergeant Cowell had misstated at least some of the facts about the slumping over the driver's wheel, how long they knocked on the windows to wake him up, that it was a keyless ignition, that he needed to lean on a car to stand up when the video didn't show that, and the slurred speech, he said he removed his firearm at the scene, but we know he was driving back in the car in the front seat with the firearm. What about those five or six things that everybody agrees weren't really accurate? Well, absolutely, Your Honor. First, Appellant characterized this as falsified testimony, and the IAB made a determination that there was no intent for him to mislead anyone, and that at most, some of his testimony was inexact. Whether or not he was slumped over his wheel is subject to interpretation. You couldn't really see from the video what his body position was, although we know he was asleep, but even if, as a district court held, even if all of those things were inaccurate, they were immaterial here. They did not undermine the objective case for effectuating the arrest, which is based on the undisputed facts that I laid out at the beginning of my argument. In addition, Your Honor, once he was brought to the intoxicated driver's testing unit, he refused a breathalyzer after being informed that it was admissible evidence of his guilt. Appellant— Is that relevant to the false arrest claim? To the prosecution, to the malicious prosecution claim. You don't think it's relevant, then, to the false arrest claim? Correct. He was already in custody. He was already in custody, Your Honor. It's just, you know, Appellant makes much about him passing the field sobriety test some two hours after he had been found asleep at the wheel, but not only does intoxication sort of wear off over time, and that his condition would have improved some two hours later, but his refusal to take the breathalyzer, coupled with his pre-arrest evidence, established probable cause for the malicious prosecution case, for the prosecution as well, Your Honor. And if the Court has no further questions, I'll rely on the city's papers. Thank you. Thank you. Thanks, Mr. Allen. Mr. Bernstein. Yes, briefly. True, the effects of alcohol wear off over time, but we have four officers on the scene, as I said earlier, who, Flores, Daly, Ebreu, Passamiris, who did not smell alcohol on his breath. One of them transported Plaintiff to the police station, so he was in close proximity to the Plaintiff, did not smell alcohol on the Plaintiff's breath. Where's the objective basis beyond him sitting in the car in that circumstance that he was driving while intoxicated? With an open bottle of beer, right? Correct. But no one smelled anything on him. People who sat right next to him brought him to the station, interacted with him personally. Four different officers on the scene. What could have been a reasonable explanation, what could have been a more reasonable explanation for this set of facts than intoxication? He could have had a health condition on the spot. Who knows? He could have had an all-nighter. You might think, gee, he might be drinking, but that's supposition. I mean, obviously, you would consider alcohol. He had the alcohol at his fingertips. But that, based on the other facts that we know, doesn't mean he was intoxicated. Your first instinct would be, oh, he's been drinking. Okay, we have a problem. Then you get him out of the car. What's the probable cause? I mean, once all of these factors are aired, you may not have, you could easily, and apparently didn't have proof beyond a reasonable doubt, but that's not what we're talking about here. We're just talking about these officers, police officers come up and see a parked car on the street for 20 minutes, guy's been asleep for 20 minutes, middle of the road, engine running. I agree. Alcohol at his fingertips. At first glance, you think he's been drinking, and then the more you spend time with him, you do your job, you have the feel of sobriety, you realize he's not intoxicated. Something else is going on here. We can't arrest him for DWI. That's our point. Thank you. Thank you. Thank you both. We'll reserve decision in this case.